No. 99,155

ROBERT W. MANLY and JANE MANLY, *Appellees/Cross-appellants*, v. CITY OF SHAWNEE, KANSAS, *Appellant/Cross-appellee*, and SHAWNEE MISSION SCHOOL DISTRICT, a/k/a UNIFIED SCHOOL DISTRICT NO. 512, *Appellee/Cross-appellee*.

(194 P.3d 1)

Opinion filed October 17, 2008.

*Marvin E. Rainey*, of Rainey & Rainey, of Overland Park, argued the cause, and *Chad E. Humble*, of the same firm, was with him on the briefs for appellant/ cross-appellee City of Shawnee.

*Rod L. Richardson*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, argued the cause, and *Richmond M. Enochs* and *James L. MowBray*, of the same firm, were with him on the briefs for appellees/cross-appellants Robert Manly and Jane Manly.

*Curtis Tideman,* of Lathrop & Gage, L.C., of Overland Park, argued the cause, and *Jeffrey R. King* and *David E. Waters,* of the same firm, were with him on the briefs for appellee/cross-appellee Shawnee Mission School District.

*Donald L. Moler, Jr.,* executive director, and *Sandra Jacquot,* legal counsel, were on the brief for the *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

JOHNSON, J.: This appeal and cross-appeal emanate from the Shawnee Mission School District's (school district) application to the City of Shawnee (City or City Council) for a special use permit to allow the construction of an illuminated softball complex and stadium next to property owned by Robert and Jane Manly. Although the facility has been constructed and in use for some time, the City appeals the district court's ruling on the number of votes required to issue a special use permit under K.S.A. 12-757(d) and, alternatively, challenges the district court's refusal to consider the City Council's second vote on the application. The Manlys likewise continue to litigate the genesis of the completed project by cross-appealing, wherein they contend that the district court should have considered and rejected the City Council's second vote; that the district court erred in ruling the zoning change was reasonable; and that the district court erred in failing to recognize and find a violation of the Manlys' due process rights. Finding that the district court misinterpreted K.S.A. 12-757(d), we reverse its ruling that the initial vote by the City Council was unlawful, and we remand for a dismissal of all further proceedings in this case.

## FACTUAL AND PROCEDURAL HISTORY

The procedural history of this case is rather tortured and convoluted, and we perceive that a detailed recitation is unnecessary for our decision. We will begin with a factual overview, describing only the relevant portions of the proceedings.

The Manlys owned 38 acres of land in Shawnee, Kansas, adjacent to an 18-acre tract owned by the school district. The school district land was zoned for agricultural use, which would have permitted a softball field, but not one with lights and a stadium. On October 14, 2005, the school district applied to the City for a special use permit for a proposed softball facility with four playing

fields, parking for 300 cars, seating capacity for 700, and sports lighting on the fields. A storage building and a concession/restroom building were also included. The school district planned to use the fields for five high school varsity, junior varsity, and "C" teams, and anticipated the possibility of leasing the facility to outside youth organizations. The construction was scheduled to begin in the spring of 2006 and to be completed in time for the spring 2007 season.

The planning commission scheduled a public hearing on the application for November 21, 2005, and appropriate notice was given to neighboring landowners and the public. The City planning staff studied the plan proposal and submitted a memorandum in which it recommended approval with certain conditions to address concerns about parking, lighting, and site buffering.

At the November 21 meeting, the planning commission heard from and questioned the City associate planner about the staff review of the school district's plan. The commission heard extensive comments from the public, including Robert Manly. Thereafter, the planning commission discussed the proposal and ultimately voted 4 to 3 to recommend that the City deny the special use permit, citing the frequency with which the facility would be used and its impact on surrounding properties.

The City Council considered the application on December 12, 2005. The council members heard from and questioned the City planning director, a school district administrator, the project architect, and members of the public, including Manly and his attorney. Some of the council members voiced a concern that the site plans had been modified since the planning commission considered them. On a 5 to 3 vote, the City Council remanded the application to the planning commission for further review, specifically requesting an examination of the following items:

"(1) the revised site plan lowering the elevation of the parking lot along the south side of the property an additional two feet; (2) revisions in the proposal to turn the lights of the field off earlier than originally proposed; (3) Using a board on board fence along the south property line or consider requiring solid fencing also along the east and north property lines to assist in the reduction of noise; (4)

Whether further restrictions should be imposed on the rental of the facility between June and October."

The planning commission reconsidered the application on January 4, 2006. Although the commissioners received conflicting opinions on whether it could reopen the public hearing, it voted not to do so, although it accepted a letter from the Manlys' attorney to be included in the record. After discussing the proposed changes to the plan, the commission voted 5 to 3 to reaffirm its previous recommendation of denying the special use permit.

The City Council reconsidered the application on January 9, 2006. The City Council heard from a number of people, including members of the public. A motion to deny the permit failed on a 4 to 4 vote. A motion to grant the special use permit in contravention of the planning commission recommendation and to modify any conflicting portion of the City's comprehensive plan passed on a 5 to 4 vote, with the mayor casting the tie-breaking vote.

On January 23, 2006, the Manlys filed eight protest petitions, pursuant to K.S.A. 12-757(f)(1). The record does not reflect if any direct action was taken on those petitions.

On February 7, 2006, the Manlys filed a petition in district court, pursuant to K.S.A. 12-760(a), requesting a determination of the reasonableness of the City's approval of the special use permit and seeking an injunction during the pendency of the litigation. Ultimately, on December 4, 2006, the district court issued a memorandum decision in which it found that the City's action in overriding the planning commission recommendation with a simple majority was unlawful, in contravention of K.S.A. 12-757(d). The court also held that the public hearing was officially concluded on November 21, 2005, rendering the protest petitions untimely. Accordingly, the City's approval of the special use permit was reversed and the application was remanded to the City Council for further proceedings consistent with the court's ruling. The district court declined to make any findings on the reasonableness of the proposed special use permit.

Thereafter, all parties filed assorted motions with the district court; the school district and the City made unsuccessful attempts

to appeal to the Court of Appeals. Meanwhile, the City Council had a special meeting on December 19, 2006, and voted 6 to 2 to ratify and reaffirm the action taken at the January 9, 2006, meeting which granted the special use permit.

On February 8, 2007, the district court held a status hearing on the posttrial matters and set a briefing schedule. On May 31, 2007, the district court issued a memorandum decision finding the Manlys had failed to sustain their burden of proving the City's decision to grant the special use permit was unreasonable and that the permit did not constitute impermissible spot zoning. However, the district court reiterated that the simple majority vote at the January 9 meeting was unlawful. The district court further opined that it did not have jurisdiction to consider the City's actions at the posttrial special meeting on December 19, because that action had not been appealed.

After further posttrial motions and premature notices of appeal, an appeal and cross-appeal were finally docketed with the Court of Appeals. Upon the Manlys' motion, the appeal was transferred to the Supreme Court, pursuant to K.S.A. 20-3018(c).

## INITIAL CITY COUNCIL VOTE

The core question in this case is whether the City had the authority to grant the special use permit with a simple majority vote, after the planning commission had reconsidered the proposal and reaffirmed its recommendation to deny the permit. The answer is found in the applicable statutes. Therefore, our review is unlimited, and we need not afford any deference to the district court's interpretation. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

The controlling statutory provision is found in K.S.A. 12-757(d), which provides, in relevant part:

"Unless otherwise provided by this act, the procedure for the consideration and adoption of any such proposed amendment shall be in the same manner as that required for the consideration and adoption of the original zoning regulations. . . . When the planning commission submits a recommendation of approval or disapproval of such amendment and the reasons therefor, the governing body may: (1) Adopt such recommendation by ordinance in a city or by resolution in a county; (2) override the planning commission's recommendation by a ⅔ ma-

jority vote of the membership of the governing body; or (3) return such recommendation to the planning commission with a statement specifying the basis for the governing body's failure to approve or disapprove. If the governing body returns the planning commission's recommendation, the planning commission, after considering the same, may resubmit its original recommendation giving the reasons therefor or submit new and amended recommendation. Upon the receipt of such recommendation, *the governing body, by a simple majority thereof, may adopt or may revise or amend and adopt such recommendation* by the respective ordinance or resolution, or it need take no further action thereon. If the planning commission fails to deliver its recommendation to the governing body following the planning commission's next regular meeting after receipt of the governing body's report, the governing body shall consider such course of inaction on the part of the planning commission as a resubmission of the original recommendation and proceed accordingly." (Emphasis added.)

The well-settled starting point for interpreting a statute is to look at what the legislature actually said by reading the words of the statute and ascribing ordinary meanings to ordinary words. See *State v. McElroy*, 281 Kan. 256, 262, 130 P.3d 100 (2006). We have explained:

"When we are called upon to interpret a statute, we first attempt to give effect to the intent of the legislature as expressed through the language enacted. When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent. See *State v. Robinson*, 281 Kan. 538, 539-40, 132 P.3d 934 (2006); *CPI Qualified Plan Consultants, Inc. v. Kansas Dept. of Human Resources*, 272 Kan. 1288, 1296, 38 P.3d 666 (2002)." *In re K.M.H.*, 285 Kan. 53, 79-80, 169 P.3d 1025 (2007).

Beginning that process, we first discover that the statute clearly establishes that, if the governing body (hereafter "city") wants to take action upon a proposed zoning amendment when it first receives a planning commission recommendation, it has three options. The city can: (1) take the recommended action by a simple majority vote; (2) take action contrary to the recommendation by a two-thirds majority vote; or (3) return the proposal to the planning commission with a statement specifying the basis for the city's

failure to follow the recommendation, *i.e.*, remand the proposal to the planning commission for reconsideration.

If, as here, the city chooses the third option of remanding the proposal, the planning commission, after a reconsideration, may: (1) resubmit its original recommendation with reasons for its action; (2) submit a new and amended recommendation; or (3) fail to deliver a recommendation to the city after the planning commission's next regular meeting following the remand. If the planning commission follows the third course of action, *i.e.*, doing nothing, the original recommendation is deemed to have been resubmitted.

Upon receipt of the post-remand, reconsidered planning commission recommendation, the city is given three options: (1) adopt the planning commission's recommendation, *i.e.*, take the action which the planning commission recommends; (2) adopt a revised or amended recommendation; or (3) take no further action. The statute specifically provides that the city's adoption of either the planning commission recommendation or a revised or amended recommendation may be accomplished "by a simple majority thereof." K.S.A. 12-757(d).

The district court interpreted the statute as requiring a two-thirds majority vote for the City to grant the special use permit in contravention of a recommended denial, both before and after the remand to the planning commission. The court opined that, by granting the permit, the City did not "revise or amend and adopt" the planning commission recommendation, but rather it "overrode the . . . recommendation." Therefore, the district court apparently imported the override language applicable to the City's first consideration of the original recommendation and grafted it onto the post-remand, reconsideration procedure.

Of course, the statute plainly does not say anything about a two-thirds vote after a proposal has been returned to the planning commission and resubmitted to the City, but rather it explicitly prescribes that post-remand action will be taken by a simple majority. In effect, then, the district court both added something that is not in the statute, *i.e.*, a two-thirds vote requirement following remand, and eliminated something that is explicitly stated in the statute, *i.e.*,

the simple majority directive. See *McElroy*, 281 Kan. at 262 (courts should not add something that is not readily found in the statute or eliminate that which is readily found therein).

The district court was persuaded to reconstruct the statute because of its belief that to do otherwise "would create an absurd loophole allowing the City Council to return a recommendation by a simple majority when it does not have the required two-thirds majority to override it, and then override the recommendation with only a simple majority when it is returned." As will be discussed later, the plain statutory language does not create an absurd loophole, but rather makes perfect sense. Nevertheless, with respect to our statutory interpretation discussion, the district court was not imbued with the discretion or authority to ignore the legislature's words in its quest to divine what the law should or should not be. See *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007).

Interestingly, the Manlys acknowledge that the district court did not read the statute as it is written. They contend that the clear language of the statute permits the City only to "adopt" or "revise or amend and adopt" the recommendation upon the second submission following remand, and there is no provision for an "override" of the resubmitted recommendation. Therefore, the Manlys read the statute as manifesting an apparent legislative intent to preclude the City from ever granting the special use permit once the planning commission has resubmitted a recommendation to deny it. However, the Manlys do not urge that construction upon us because they acknowledge that such a preclusion would usurp the governing body's authority.

We wholeheartedly agree with the Manlys' assessment of the separation of powers. A planning commission is created to fulfill an advisory function. See, *e.g.*, K.S.A. 12-757(b) ("All such proposed [zoning regulation] amendments first shall be submitted to the planning commission *for recommendation*." [Emphasis added.]); see also *Houston v. Board of City Commissioners*, 218 Kan. 323, 330, 543 P.2d 1010 (1975) (function of planning commission is advisory only). If the legislature intended to allocate the ultimate authority to grant or deny a zoning amendment to the

planning commission, it would be impermissibly shifting the City's governance from the elected City Council to an appointed advisory commission. See K.S.A. 12-104 (in acts granting or limiting powers to city governments or prescribing procedure, "governing body" is defined as mayor and council, mayor and commissioners, or board of commissioners, based on the status of the cities affected). To the contrary, we have previously declared that "[t]he final authority in zoning matters rests with the governing body possessing legislative power." *Houston*, 218 Kan. 323, Syl. ¶ 3. While the *Houston* case was decided prior to the current version of K.S.A. 12-757, it remains good law with respect to the basic allocation of governing power.

Where we begin to part company with the Manlys is with their assessment that the district court's phantom two-thirds super-majority requirement does not likewise usurp the City Council's governing authority. As illustrated in this case, that requirement would permit a simple majority of the planning commission to govern over a simple majority of the City Council. We do not believe the legislature intended for the tail to wag the dog, *i.e.*, an advisory body should not have the authority to trump the decision of the governing body that appointed it. Nevertheless, we need not rely on public policy considerations.

As noted, 12-757(d) plainly gives the City the authority to "revise or amend and adopt" a planning commission recommendation by a simple majority vote. To circumvent that plain language, the Manlys attempt to convince us that the City's authority to "revise or amend" a recommendation does not include the right to reject or overrule the recommendation. However, that contention defies logic. Obviously, when the City revises or amends a recommendation before taking action, it has implicitly rejected or overruled that part of the recommended action which was not followed. Moreover, where the recommendation is to completely deny a special use permit, *i.e.*, to tell the applicant "no," it is difficult to imagine how one revises or amends that recommendation without overriding it to some extent, *i.e.*, the only way to revise or amend "no" is to say "yes" to something.

Viewing the current statute in a historical perspective corrobo-rates our view of its meaning. Although the Manlys suggest that the statute's language is plain and unambiguous, so as to preclude a consideration of the legislative history, their arguments in support of rewriting the statute belie that suggestion. When there is am-biguity the court

" ' "is not limited to the mere consideration of the language employed, but may also look to the historical background of the enactment, the circumstances accom-panying its passage, the purposes to be accomplished, and the effect the statute may have under the various suggested constructions." ' *City of Lenexa v. City of Olathe*, 228 Kan. 773, 776, 620 P.2d 1153 (1980) (determining legislative intent in amending annexation statutes), *modified on other grounds on rehearing* 229 Kan. 391, 625 P.2d 423 [1981])." *Dillon Real Estate v. City of Topeka*, 284 Kan. 662, 679, 163 P.3d 298 (2007).

Prior to K.S.A. 12-757(d), the City would have had no option upon initially receiving a planning commission recommendation with which it did not agree. It had to return the proposal to the planning commission. The specific statutory language was:

"Upon receipt of a recommendation of the planning commission which the gov-erning body disapproves, the governing body shall return such recommendation to the planning commission with a statement specifying the basis for disapproval and such recommendation shall be considered in like manner as that required for the original zoning recommendations returned to the planning commission." K.S.A. 12-708 (Ensley 1982).

The procedures upon remand to the planning commission and upon its return to the City were the same as in the current statute. Indeed, the language over which the parties squabble in this case, "revise or amend and adopt," was identical:

"The planning commission, after reconsidering the same, may resubmit its original recommendations giving the reasons therefor or submit new and amended rec-ommendations. Upon the receipt of such recommendations, the governing body may adopt or *may revise or amend and adopt* such recommendations by ordi-nance, or it need take no further action thereon." (Emphasis added.) K.S.A. 12-708 (Weeks 1975).

In K.S.A. 12-757(d), the legislature gave the City another option upon receiving an initial recommendation with which it did not agree. Rather than remanding to the planning commission for re-

consideration, a City could move forward with taking action in contravention of the recommendation if two-thirds of the governing body did not feel the need for further input from its advisory commission. That option eliminates the need for a pointless remand. However, the legislature clarified that the two-thirds super-majority vote is only applicable to the streamlined, "no remand" initial option by specifying that the post-remand action is to be effected by a simple majority.

The legislative history of our current statute is enlightening as well. K.S.A. 12-741 *et seq.* was enacted in 1991. L. 1991, ch. 56, sec. 1. The statute was introduced by Senate Bill 23 (S.B. 23) and was the result of a study and report completed by the interim Local Government Committee. Minutes of the Senate Local Government Committee, Jan. 23, 1991. The report was submitted to the Senate Committee; it recommended recodification of planning and zoning laws contained in S.B. 23, and also recognized that despite the solid foundation of S.B. 23, further changes may be needed. The recodification project had begun over 10 years before the bill was introduced. Of note, the report stated approval authority for zoning regulations remained with the governing body. Minutes of the Senate Local Government Committee, Jan. 23, 1991, attachment 3-6.

During the January 24, 1991, meeting of the Senate Local Government Committee, the Director of Planning for the City of Overland Park raised the following issue:

"The question we have is what percentage or number of votes is needed by the governing body to approve an application [for subdivision regulations] that has been returned to the governing body by the planning commission for a second consideration. We assume that a simple majority vote is sufficient to approve, however, the legislation is not clear. We are concerned that with the present wording a ⅔rds majority vote may be argued as being necessary when the item returns from the planning commission. This same concern holds true for Page 12, Line 9-23 and Page 15, Line 11-23. These two sections deal with the adoption of zoning regulations and rezoning ordinances, respectively." Minutes of the Senate Local Government Committee, January 24, 1991, attachment 3-2.

Apparently in response to this concern, the bill was amended to add the "simple majority" language found in the current statute.

Minutes of the Senate Local Government Committee, February 6, 1991. The legislative intent is crystal clear.

In conclusion, we hold that under K.S.A. 12-757(d), the City was permitted to issue the special use permit by a simple majority vote notwithstanding the resubmitted planning commission recommendation to deny the permit. Accordingly, we find that the district court erred in ruling that the special use permit was unlawfully approved.

### Alternative Arguments

Citing to *Smith v. Yell Bell Taxi, Inc.*, 276 Kan. 305, 311, 75 P.3d 1222 (2003), the Manlys argue that, even if we find that the district court erred in its interpretation of the statute, we can affirm its ruling under the "right for the wrong reason" analysis. They then proceed to argue that (1) the City failed to provide the remand statement required by statute, rendering the action invalid; (2) the defendants acquiesced in the ruling by presenting the issue for a second vote; (3) the City failed to accept timely protest petitions which would have required a three-fourths majority vote; (4) the City failed to follow the statutory requirements for revising the comprehensive plan; and (5) the City violated its own ordinances.

In effect, the Manlys attempt to raise new issues under the guise of being an alternative rationale to uphold the district court's erroneous statutory interpretation. That attempt is unavailing. They presented these alternative issues to the district court, which either explicitly or implicitly ruled against the Manlys. If they wanted a review of those rulings, they should have identified the issues in their cross-appeal. Because the issues are not properly before this court, we decline to review them.

### THE SECOND VOTE

The City argues in the alternative that the district court erred in refusing to consider its second vote, where it granted the special use permit by a three-fourths majority vote, which was more than the alleged two-thirds majority requirement. The Manlys contend that the district court erred in failing to find the second vote ineffective or barred by res judicata. Given our holding that the first

vote was lawful, the issues raised concerning the remand to the City and the efficacy of the revote are rendered moot. Any decision on those issues would not change the fact that the special use permit was lawfully granted. See *Rodarte v. Kansas Dept. of Transportation*, 30 Kan. App. 2d 172, 183, 39 P.3d 675, *rev. denied* 274 Kan. 1113 (2002) (case is moot where the controversy between the parties no longer exists and any judgment of the court would be ineffective).

## DISTRICT COURT'S RULING ON REASONABLENESS

In their cross-appeal, the Manlys challenge the district court's finding of reasonableness. First, the Manlys contend that the district court's holding that the City unlawfully approved the special use permit contradicted its ruling that the issuance of the permit was reasonable. They argue that an action cannot be both illegal and reasonable. But, of course, it can be. The question of whether the City employed the correct procedure in granting a special use permit is separate and distinct from the question of whether it was reasonable to permit the requested use of the land.

Next, the Manlys contend that the district court failed to conduct the appropriate analysis before declaring the City's action in granting the special use permit to be reasonable. When reviewing a decision on zoning, special use permits, and conditional use permits, we are guided by principles set forth in *McPherson Landfill, Inc. v. Board of Shawnee County Comm'rs*, 274 Kan. 303, 304-05, 40 P.3d 522 (2002) (quoting *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 [1980]):

" '(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

" '(2) The district court's power is limited to determining

(a) the lawfulness of the action taken, and

(b) the reasonableness of such action.

" '(3) There is a presumption that the zoning authority acted reasonably.

" '(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

" '(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

" '(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

" '(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

" '(8) An appellate court must make the same review of the zoning authority's action as did the district court.' "

In *Golden v. City of Overland Park*, 224 Kan. 591, 598, 584 P.2d 130 (1978), this court set forth factors which a zoning body should consider when making a land use decision: (1) the character of the neighborhood; (2) the zoning uses of nearby properties; (3) the suitability of the property for the uses to which it is restricted; (4) the extent to which the change will detrimentally affect nearby property; (5) the length of time the property has been vacant as zoned; (6) the gain to the public health, safety, and welfare by the possible diminution in value of the developer's property as compared to the hardship imposed on the individual landowners; (7) the recommendations of a permanent or professional planning staff; and (8) the conformance of the requested change to the city's master or comprehensive plan.

The Manlys complain that the district court did not specifically analyze these factors. However, formal findings and conclusions are not mandatory and a governing body's decision is not unreasonable merely because the *Golden* factors were not more specifically enumerated or subjected to an issue-oriented analysis. See *Board of Johnson County Comm'rs v. City of Olathe*, 263 Kan. 667, 678, 952 P.2d 1302 (1998). Moreover, the district court had the minutes from the City planning commission and City Council meetings, the City planning staff reports, the comprehensive plan, and an audiotape of the meetings, at which there was a great deal of debate on the project's impact on the surrounding property. From that evidence, the court found that the Manlys had not met their burden of proving unreasonableness. We are convinced that the district court applied the appropriate analysis.

The Manlys focus on only two of the *Golden* factors, the character of the neighborhood and the City's comprehensive plan, in

arguing that the City's action was unreasonable. The City went above and beyond in providing an opportunity for people to discuss the character of the neighborhood and the anticipated impact the project would have on the surrounding area. Obviously, there were differing viewpoints on how the softball field would fit into the neighborhood. The City may have disagreed with the Manlys' viewpoint in that regard, but that does not translate into a failure to consider the factor or into an unreasonable action.

The Manlys also assert that the City failed to consider the conformance of the special use to the master plan. However, they then argue that the City went so far as to vote to amend the comprehensive plan if it conflicted with the special use. It makes scant sense to complain that the City did not take the comprehensive plan into account, when the comprehensive plan was specifically mentioned in the motion to approve the special use permit. Again, the City took the factor into consideration but did not agree with the Manlys' point of view.

The Manlys do not point to any other specific factors that the City failed to consider. The record demonstrates that the special use permit was thoroughly considered by both the planning commission and the City Council. Both bodies had the benefit of reports from the City planning staff and the opportunity to question the school district about the plans; the plans were modified during the process to mitigate concerns; and the public provided input and neighboring landowners were questioned about their concerns. In other words, plenty of evidence relating to the *Golden* factors was put before the governing body.

Moreover, the district court reviewed the *Golden* factors, concluding that under the presumption that the City acted reasonably, the district court could not determine that the evidence was so overwhelming or compelling that the City's decision in favor of the special use permit was unreasonable. We affirm that determination.

## DUE PROCESS

For their final issue on cross-appeal, the Manlys assert that

"[t]he District Court erred in ruling Plaintiffs did not have a protected property interest as affected property owners within 200 feet of the subject tract which gives them independent due process rights, and the City violated those rights by failing to follow procedure established by statute and its own ordinance and by failing to allow Plaintiffs an opportunity to be heard at a Planning Commission meeting."

Citing to *Schlup v. Bourdon*, 33 Kan. App. 2d 564, 567, 105 P.3d 720 (2005), the Manlys assert that our review is de novo. The City concurs.

We first note that the record does not disclose a ruling by the district court that the Manlys did not have a protected property interest as affected property owners. Moreover, we are unconvinced by Manlys' suggestion that they have some sort of property interest in the procedures employed by the City. We perceive the only question before us is whether the proceedings that led to the granting of the special use permit were fair, open, and impartial. See *McPherson Landfill, Inc.*, 274 Kan. at 317. We believe that they were.

The Manlys received the appropriate notice under K.S.A. 12-757(b). They appeared and had an opportunity to be heard at the public hearing before the planning commission on November 21, 2005. The Manlys and their attorney had an opportunity to be heard at the December 12, 2005, City Council meeting. Again, at the January 9, 2006, meeting, the Manlys and their attorney took advantage of their opportunity to address the City. The only meeting that did not have public comment was the planning commission meeting to reconsider the remanded proposal. Contrary to the Manlys' contention, the public hearing does not remain open after the planning commission votes on its recommendation. Further, there is no statutory provision for another public hearing when the governing body remands the matter back to the planning commission for reconsideration.

In short, the notice and hearing requirements of K.S.A. 12-741 *et seq.* were followed. The record confirms that the hearings before both the planning commission and the City Council were unquestionably fair, open, and impartial. The Manlys fail to establish any due process violation which would invalidate the City's action.

In conclusion, we reverse the district court's holding that the City's granting of the special use permit upon a simple majority vote was unlawful. We affirm the district court's finding that the City acted reasonably in granting the special use permit. Therefore, the project which has been completed was effected based upon a lawful special use permit. We remand to the district court for a dismissal of all further proceedings.

Reversed and remanded for dismissal.