No. 127,167

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES PIERSON,
*Appellant*,

v.

BOARD OF POTTAWATOMIE COUNTY COMMISSIONERS,
*Appellee*.

SYLLABUS BY THE COURT

1.

When making land use decisions, zoning authorities generally should consider eight factors as held in *Manly v. City of Shawnee*, 287 Kan. 63, 76, 194 P.3d 1 (2008): (1) The character of the neighborhood; (2) the zoning uses of nearby properties; (3) the suitability of the property for the uses to which it is restricted; (4) the extent to which the change will detrimentally affect nearby property; (5) the length of time the property has been vacant as zoned; (6) the gain to the public health, safety, and welfare by the possible diminution in value of the developer's property as compared to the hardship imposed on the individual landowners; (7) the recommendations of a permanent or professional planning staff; and (8) the conformance of the requested change to the zoning authority's master or comprehensive plan.

2.

Whether a zoning authority's decision is reasonable is a question of law based on the facts before the zoning authority. When reviewing a district court's approval of a zoning authority's approval of a conditional use permit, an appellate court must make the same review of the zoning authority's action as the district court did. Because appellate courts must rely on the same facts as the district court, they do not give deference to a

1

district court's conclusion on the reasonableness of a land use decision by the district court.

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Oral argument held May 20, 2025. Opinion filed August 1, 2025. Affirmed.

*Richard H. Seaton Sr.* and *Sharidan E. Kraljic*, legal intern, of Seaton Law Offices, LLP, of Manhattan, for appellant.

*P. Bernard Irvine*, of Irvine Law, LLC, of Manhattan, for appellee.

Before HILL, P.J., PICKERING and ISHERWOOD, JJ.

HILL, J.: The days of the free range are passed in Kansas. Now, all counties manage land use with maps, zoning ordinances, and a comprehensive plan. From time to time, someone objects to a neighbor's proposed land use because what we do with our land truly affects us all. This appeal centers on an objection to a proposed land use allowed by a conditional use permit that was issued by the Board of County Commissioners of Pottawatomie County. The Board has permitted Mid-States Materials to quarry gravel from an 850-acre tract. James Pierson, who owns land near that tract, appeals the district court's approval of the actions taken by the Commissioners when they granted the conditional use permit to Mid-States.

Pierson claims that the Board, in issuing the permit, disregarded the character of the neighborhood, the property's suitability for the uses it is currently restricted for, and compliance with the Board's Comprehensive Plan. In turn, Pierson argues that the district court was unreasonable in finding the Board's actions were reasonable. Pierson asks us to reverse and remand.

2

In our review, by law, our task is similar to the district court's. Is granting this permit reasonable under the facts and the law? We review that decision but are not bound to follow that decision. Our review leads us to hold that the Board acted reasonably in granting the Conditional Use Permit, and we affirm the district court's ruling approving the Board's actions.

*Land use is regulated in Kansas.*

Each county in Kansas has now adopted a master plan of land usage with areas divided into use zones: i.e., Residential, Agricultural, Industrial, etc. Various areas in a county are used in various ways. It follows then that with controlled use, regulation of land usage has grown. With more regulation, the law of land usage has grown. The application of these regulations are often reviewed by Kansas courts for reasonableness.

Whether a zoning authority's decision is reasonable is a question of law based on the facts before the zoning authority. "An appellate court must make the same review of the zoning authority's action as did the district court." *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 (1980). Because appellate courts rely on the same facts as the district court, they "do not give deference to the district court's conclusion on reasonableness." *Layle v. City of Mission Hills*, 54 Kan. App. 2d 591, 598, 401 P.3d 1052 (2017).

Courts presume that a zoning authority's decision is reasonable. The party appealing the decision must prove the decision was unreasonable by a preponderance of the evidence. A zoning authority's decision is unreasonable if "it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate." *Combined Investment Co.*, 227 Kan. at 28. Courts should only find a zoning authority's decision unreasonable when

3

"clearly compelled to do so by the evidence." 227 Kan. at 28. Applying these holdings here means that Pierson has the burden to show that the Board's issuance of this permit was unreasonable.

*Kansas courts follow a* Golden *rule when considering land use regulation.*

One case has set a benchmark when considering these types of questions. When making land use decisions, zoning authorities generally should consider eight factors initially outlined in *Golden v. City of Overland Park*, 224 Kan. 591, 598, 584 P.2d 130 (1978):

> "(1) [T]he character of the neighborhood; (2) the zoning uses of nearby properties; (3) the suitability of the property for the uses to which it is restricted; (4) the extent to which the change will detrimentally affect nearby property; (5) the length of time the property has been vacant as zoned; (6) the gain to the public health, safety, and welfare by the possible diminution in value of the developer's property as compared to the hardship imposed on the individual landowners; (7) the recommendations of a permanent or professional planning staff; and (8) the conformance of the requested change to the [zoning authority's] master or comprehensive plan." *Manly v. City of Shawnee*, 287 Kan. 63, 76, 194 P.3d 1 (2008).

*We look at the local rules adopted by Pottawatomie County.*

The Board has adopted a body of Unified Development Regulations. UDR § 10.1.4(a) incorporates *Golden* factors one, two, four, five, and six for considerations by the local Planning Commission when making its Conditional Use Permit recommendation to the Board. Those deal with the character of the neighborhood, the zoning uses of nearby properties, the detrimental effect to nearby property, how long the property has been zoned, and the amount of gain to public health, safety, and welfare compared to the diminution in value to the properties. UDR § 10.3.14(b) requires all

mining and quarrying Conditional Use Permit applications to include mitigation plans for dust, noise, stormwater run-off, light, and blasting.

Once the Planning Commission makes its recommendation, the Board has three options: (1) approve the recommendation; (2) override the recommendation by a 2/3 majority; or (3) send the recommendation back to the Planning Commission for further consideration. UDR § 10.1.3(c).

*How this controversy arose.*

Mid-States owns 853.5 acres in Pottawatomie County that is zoned as A-1 Agriculture. All of the surrounding properties are also zoned A-1. The tract consists mostly of pastureland over a series of hills, with three streams, some woods, and a few farmhouses. This is where they want to quarry rock. To enable the construction of a quarry, Mid-States requested a Conditional Use Permit from the Board. Appellant James Pierson owns an 80-acre tract that is boxed in on three sides by the site of the proposed quarry.

Pottawatomie County adopted a comprehensive land use plan in 2019. The plan included a "Future Land Use" map, which stated that the area around and including the site of the proposed quarry was intended for agricultural uses. The Board's Unified Development Regulations do allow the issuance of a conditional use permit for a quarry on lands zoned A-1 Agriculture.

*We start our review with the Planning Commission.*

Pottawatomie County Planner Stephan Metzger prepared a staff report recommending approval of the Conditional Use Permit with seven conditions:

5

1. Mid-States must follow its quarry development plan, including operating hours and mitigation proposals.

2. Mid-States must follow certain blasting requirements.

3. Mid-States must follow the development and reclamation proposals in its application and cannot open, mine, or extract from more than 40 acres at any one time.

4. Mid-States must berm or fence the mining area.

5. Mid-States is responsible for aggregate spillage and cleanup within one mile.

6. Mining cannot occur within 50 feet of neighboring property lines; 50 feet of public rights-of-ways; or 1,000 feet of neighboring dwellings.

7. Mid-States and the Board must enter a road maintenance agreement involving haul routes, road and fence improvements, and dust control.

The Pottawatomie County Planning Commission then held three public hearings on the Conditional Use Permit application in April and May 2022. The Planning Commission ultimately voted 4-3 to recommend denial of Mid-States' Conditional Use Permit request. The majority believed the Conditional Use Permit request was inconsistent with the Board's comprehensive plan goals of preserving prairie land and the county's rural character, did not fit the neighborhood's character, and would detrimentally affect nearby properties. The minority claimed it was "a matter of property rights for landowners of the [Conditional Use Permit] tracts," surmising that the hardship on the landowners outweighed gains to public health, safety, and welfare from denying the Conditional Use Permit request.

Additionally, the staff report considered five factors specific to the use of the tract as a quarry: (1) dust mitigation, (2) noise mitigation, (3) stormwater run-off mitigation, (4) light mitigation, and (5) blasting mitigation. Mid-States stated it would mitigate dust, noise, stormwater run-off, and blasting by complying with applicable state and federal regulations. As for light mitigation, the staff report noted that no permanent electronic

6

lights were planned for the operation. Ultimately, the Board's planning staff recommended approval of the Conditional Use Permit, subject to a number of "use-specific requirements."

*The matter comes before the Board of County Commissioners.*

The Board received 14 public comments on the Conditional Use Permit request. Two of the public comments—submitted by Conditional Use Permit landowners—supported the Conditional Use Permit request. At Mid-States' request, Andrew Lyon, director of conservation at the Kansas Department of Agriculture, submitted a comment detailing Mid-States' five awards for its prior reclamation efforts. (Reclamation refers to restoring land after it has been used for mining.) The other 11 comments opposed Mid-States' Conditional Use Permit request, primarily citing potential home and road damage, increased heavy traffic, and adverse environmental impacts to prairie grass, wildlife habitats, and water quality.

The Board of County Commissioners held two special meetings on the matter. Ultimately, the Board disregarded the planning commission's recommendation and voted 2-1 to approve the Conditional Use Permit. The Board also imposed conditions on the Conditional Use Permit to mitigate potentially detrimental impacts on nearby property. The conditions imposed by the Board included compliance with the hours of operation, implementation of a dust control plan, completion of a preexcavation seismology plan at the property boundaries, adherence to blasting restrictions, adherence to fencing requirements, cooperation with utility companies, compliance with the county's road maintenance agreement, creation of a reclamation bond, and construction of stormwater retention ponds.

The Board also restricted Mid-States from opening, mining, and extracting more than 40 acres at any one time on the quarry site, and no more than 10 acres in any

subsequent phase until reclamation is completed on the previous phase. Additionally, the Board required setbacks of 100 feet from nonapplicant property lines, 50 feet from all public rights-of-way, and 1,000 feet from all nonparticipating dwellings.

Lastly, the quarry would be subject to review by the planning commission every five years after the initial issuance of the Conditional Use Permit for compliance with the provisions of the Conditional Use Permit and any other pertinent local, state, or federal regulations. The planning commission retained the ability to rescind the Conditional Use Permit if the quarry's compliance with the Conditional Use Permit and regulations is deficient.

*The dispute moves on to the district court.*

Following the Board's approval of the Conditional Use Permit, Pierson filed an appeal with the Pottawatomie County District Court. After considering the factors set out in *Golden*, the district court determined that the Board acted lawfully and reasonably when it granted the Conditional Use Permit.

*The dispute arrives in this court.*

Pierson raises three factors for our consideration: (1) The Conditional Use Permit completely disregards the character of the neighborhood where the quarry would be located; (2) the current A-1 agricultural zoning of the proposed quarry site is a suitable land use for that land and should not be changed; and (3) the Conditional Use Permit does not conform to Pottawatomie County's master plan and it is unreasonable to divert from the master plan. It is his burden to persuade us that the Board has acted unreasonably in granting this permit.

*We look at the neighborhood.*

Turning to the factors that Pierson raises in his argument, we must first consider the character of the neighborhood where the quarry will be located. On this factor, the Board's professional staff report made a comparison with other quarries in the county and found:

> "The neighborhood is almost exclusively agricultural. There are four houses owned by non-participating landowners within 1,000 feet of the quarry, and two other houses located just outside of 1,000 feet. For comparisons' sake, four houses within 1,000 feet broadly conforms with the other four major quarries in the County. The most houses within 1,000 feet of an existing quarry is 20. The lowest number is zero."

From the staff report, we read that the proposed quarry would be located in a rural, agricultural setting. Indeed, pastureland is not a rock quarry. We question whether this is truly an untouched environment because there are already four other quarries in the county—with one very close to the proposed site in this case. This land is economically useful. It is not a nature preserve. Furthermore, the number of homes in the vicinity of the proposed quarry is consistent with other quarries in the area.

We are unpersuaded by Pierson's argument about the neighborhood. The staff report acknowledged that, "[a]s with all quarries, there is the potential that it creates a detrimental impact on nearby property." All of these potential impacts are addressed in the Conditional Use Permit. Before approving the Conditional Use Permit, the Board ensured that the quarry would mitigate dust, noise, stormwater run-off, light, and blasting. The Board also imposed the 40-acre quarry limit requirement and the setback requirements. Since the Board addressed the potential detrimental impacts of the quarry on the neighboring properties, we hold that the Board was reasonable when it approved the Conditional Use Permit.

9

*Is Pierson's claim of zoning change valid?*

Next, Pierson argues that the current A-1 agricultural zoning of the proposed quarry site is a suitable land use for that land and should not be changed. In support of this argument, Pierson points out that his own land is currently pastureland and has been used for agriculture since the 1800s. We question the validity of this argument.

Pierson's argument on this factor is unclear. Rather than address the proposed quarry site, Pierson briefly describes the history and use of his own tract of land. He focuses on his tract and not the proposed quarry. But there is no evidence in the record to suggest that Pierson's land will cease to be zoned as A-1 Agriculture or that he will be unable to use it as pastureland. Furthermore, the proposed quarry site will remain zoned as A-1 Agriculture and in the long term will be reclaimed as pastureland once the quarry operation is completed. Simply put, we see no zoning change here.

*Does this permit fail to comply with the Board's comprehensive plan?*

Finally, Pierson argues that the Conditional Use Permit does not conform to Pottawatomie County's master plan, and it is unreasonable to divert from the master plan.

The Board's master plan is a long-range plan for the development of the area. It illustrates the big picture and does not control smaller details. Caselaw teaches us that these plans are a reference for the governing bodies but are not statutes. While a zoning authority should consider the comprehensive plan whenever analyzing a zoning decision, the zoning authority is not bound by the plan. *Taco Bell v. City of Mission*, 234 Kan. 879, 894, 678 P.2d 133 (1984). This advisory role is emphasized later. "While we recognized that cities are not bound by their comprehensive plans in making these rezoning decisions, we urged that the plans not be overlooked when changes in zoning are under

10

consideration." *Board of Johnson County Comm'rs v. City of Olathe*, 263 Kan. 667, 683, 952 P.2d 1302 (1998).

Quarries are specifically mentioned in the plan once. That reference only notes that areas with quarries in Pottawatomie County may be viewed as an example of sites with an industrial character.

Our review of this record compels us to rule against Pierson on this point. Simply put, we cannot say that the Board ignored the goal of preserving the prairie. After two public hearings about the proposed quarry, the Board placed over a dozen conditions on this proposal. These conditions thus minimize the quarry's impact on the prairie. The limitation of how large an area can be opened alone appears to be a reasonable balanced response to those concerned about preserving the prairies and not voiding the plan. A conditional use permit is designed to limit the ways land is used, and this Board exercised their authority to grant this permit in accordance with the plan not in contravention of that plan.

Pierson points to a future land use map in the plan. But that future land use map is characterized by the plan as "[m]acro level—generalized development patterns." The future land use map can provide guidance for zoning decisions, but it does not play the same role in the regulation of development as the UDR's zoning map. As the plan states, the zoning map is "[m]icro level—site-specific focus." The distinction between the two maps stems from the fact that the master plan established guiding principles for the county's development, while the UDR's zoning map established mandatory legal requirements.

In sum, nothing in the master plan prohibits the Conditional Use Permit. The quarry property retains its agricultural zoning, which is entirely consistent with the plan. The Conditional Use Permit does not violate the comprehensive plan of the Board.

11

*We offer some final observations.*

We recognize that our prairies are a natural wonder that are not being produced anymore. What has taken a millenia to create can be destroyed virtually overnight. Thus, it is a heavy responsibility for our leaders who make decisions about land use to take the long-term view on these questions and not be controlled by temporary or trivial concerns. Truly, how we use our land affects us all. These decisions are now—and should be—made by those who live there.

The process followed in this case for the issuance of this permit is an example of step-by-step, rational, public decision-making. Every proceeding was open to the public. There were no secret meetings. Everything was discussed in the open. Public comment was sought, received, and considered by those making the decision. Expert advice was considered. Reasonable limits were created and imposed on this permit.

In our appellate review, we must ask several questions. Has the decision-making here proceeded fairly? Have all concerned, both proponents and opponents, had the opportunity to express their views? Did they have the opportunity to offer evidence in support of their views? All three questions we can answer with "yes." Did the decision show evidence of bias or prejudice? From this record, we must answer "no."

We will not substitute our judgment for the Board. By law, their decision is presumed reasonable. Pierson has failed to convince us otherwise. We affirm the issuance of the Conditional Use Permit and affirm the district court's approval of it.

Affirmed.