NOT DESIGNATED FOR PUBLICATION

No. 119,073

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARTIN TERNES, et al.,
*Appellees/Cross-appellants*,

v.

BOARD OF COUNTY COMMISSIONERS
OF SUMNER COUNTY, KANSAS,
*Appellant/Cross-appellee*.

MEMORANDUM OPINION

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed June 12, 2020. Affirmed in part, reversed in part, and remanded with directions.

*David G. Seely* and *T. Chet Compton*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant/cross-appellee.

*Jerry D. Hawkins* and *Stephen H. Netherton*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellees/cross-appellants.

Before BUSER, P.J., GREEN and MALONE, JJ.

BUSER, J.: This appeal and cross-appeal arise from Invenergy, LLC's (Invenergy) applications for a zoning change and conditional use permit to allow the construction and operation of the Argyle Creek Wind Project in Sumner County. After a planning commission recommended denying Invenergy's applications, the Sumner County Board of County Commissioners (Board) voted to approve both applications. Plaintiffs, who include several Sumner County landowners, challenged the Board's decisions in district court. The district court struck the zoning change and conditional use permit, finding the

1

zoning change was unreasonable and the Board lacked jurisdiction to approve the conditional use permit.

On appeal, the Board first contends the district court erred by striking the conditional use permit because the Board could approve the permit against the planning commission's recommendation. The Board next argues the zoning change was reasonable even though the evidence presented at the hearings supported only a wind energy project and no other permitted use in an Agricultural Commercial District. Plaintiffs cross-appeal arguing that imperfect notice on the applications rendered the Board's zoning decisions invalid.

Upon review, we hold that the district court erred by striking the zoning change and conditional use permit. Contrary to the district court's findings, the Board could approve the conditional use permit despite the planning commission's recommendation to deny the permit, and the zoning change was reasonable. We also find the district court did not err by ruling that imperfect notice by Sumner County did not render the zoning decisions invalid. Accordingly, we affirm in part, reverse in part, and remand with directions to uphold the resolutions approving the zoning change and Invenergy's conditional use permit.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2015, Invenergy began obtaining lease agreements from Sumner County landowners in anticipation of developing a wind farm. Under the Sumner County Zoning Regulations (Zoning Regulations), commercial wind energy projects are allowed on Agricultural Commercial District property through a conditional use permit. But the land Invenergy wished to develop was zoned Rural District, which did not permit wind energy projects. As a result, Invenergy needed to satisfy two requirements to lawfully operate the wind farm:  (1) obtain a zoning change from Rural District to Agricultural

2

Commercial District and (2) obtain a conditional use permit to operate a commercial wind farm.

In 2016, Invenergy filed applications for a zoning change and for a conditional use permit. The proposed zoning change and conditional use permit impacted about 14,000 acres of land in northern Sumner County. Invenergy planned to include between 60 and 65 commercial wind turbines in the Argyle Creek Wind Project.

*Notice of Invenergy's Applications*

On November 10, 2016, the County published an official notice in the *Belle Plaine News* for Invenergy's zoning change application and conditional use application. The notice identified the applicant as Invenergy, correctly stated the legal description of the property, and included a map prominently labeled "Argyle Creek Wind Project." But the notice incorrectly used the name of a previously approved wind energy project—"Wild Plains Wind Project"—when describing Invenergy's request for a conditional use permit. The Wild Plains Wind Project is unrelated to Invenergy's Argyle Creek Wind Project. The notice explained that a public hearing before the Sumner County Planning Commission (Planning Commission) would occur on December 7, 2016.

On November 17, 2016, the County mailed certified letters to all persons and entities owning property within 1,000 feet of the Argyle Creek Wind Project, except for Jeffery and Brooke Potucek. The letter contained the published notice, a map of the project's boundary, and notice that Invenergy's applications would be presented to the Planning Commission on December 7, 2016. The notice in this letter also incorrectly used the name "Wild Plains Wind Project" when describing Invenergy's request for a conditional use permit. But again, the map was labeled "Argyle Creek Wind Project" and the legal description correctly described the proposed project's boundaries.

3

Before the Planning Commission's December 7, 2016 meeting, the County discovered the error in the published notice and the certified letters. The County determined the error did not require republication or continuing the Planning Commission's meeting to a later date. However, on December 1, 2016, the County mailed another certified letter to landowners owning property within 1,000 feet of the project. Once again, the County failed to address a letter to Jeffery and Brooke Potucek. The newly mailed letter contained a revised official notice with the project name corrected to "Argyle Creek Wind Project."

Sumner County never published a corrected notice in the *Belle Plaine News*. The only notice mailed 20 days before the Planning Commission's meeting contained the incorrect name of "Wild Plains Wind Project" when describing the requested conditional use permit.

*The Planning Commission's Public Hearing*

On December 7, 2016, the Planning Commission met and held a public hearing on Invenergy's applications for a zoning change and a conditional use permit. The Planning Commission first considered Invenergy's zoning change application. An Invenergy representative explained that the company wished to construct a commercial wind project and gave a presentation. Thirteen citizens commented on Invenergy's zoning change application. Many citizens spoke against the zoning change application, raising concerns about health issues, diminished property values, noise problems, and undesirable scenery. Invenergy representatives addressed some of the public's concerns.

After hearing the comments, the Planning Commission voted to recommend denying the zoning change application by a vote of five to three. The members who voted to recommend denial reasoned that the area contained too many current and future

4

residential properties, the zoning change would adversely affect surrounding land use, and the change did not follow the comprehensive plan.

The Planning Commission next considered Invenergy's conditional use application. Again, Invenergy representatives and public citizens commented on this application. The Planning Commission then voted to recommend denying the conditional use application by a vote of five to three. During the public hearing, County staff announced that the Board would make a final decision on December 27, 2016. The Planning Commission submitted a written report of its findings to the Board.

On December 21, 2016, Sumner County mailed Jeffery and Brooke Potucek a letter about Invenergy's applications and informed them of the Board's meeting scheduled for December 27, 2016. That same day, Invenergy amended its applications by revising the project's boundaries. The revised boundaries eliminated about 700 acres of the project to address concerns over the project's proximity to an area with higher housing density. As a result of the reduced footprint, the land belonging to the Potuceks—along with several other individuals—was no longer within 1,000 feet of the project boundary.

*The Board's Hearing*

On December 27, 2016, the Board met to consider Invenergy's applications. The Board first took up Invenergy's zoning change application, which sought the zoning change from Rural District to Agricultural Commercial District. After Invenergy representatives spoke, 29 citizens commented on the zoning change application. While most of the citizens spoke in opposition, some spoke in favor of the application. The Board voted two to one to approve the zoning change application containing the reduced footprint.

5

The Board next considered Invenergy's application for a conditional use permit. Jerry Hawkins, an attorney who represented some landowners at the time, argued the conditional use issue was in the Planning Commission's exclusive jurisdiction. Hawkins recited a portion of the Zoning Regulations at issue in this appeal and argued that the Planning Commission needed to approve the conditional use application before the Board could grant the permit. Nine citizens then commented on the conditional use application. After Invenergy representatives responded to the citizens' concerns, the Board approved the conditional use permit by a vote of two to one.

*The District Court Strikes the Zoning Change and Conditional Use Permit*

Plaintiffs challenged the Board's decisions under K.S.A. 12-760 by filing an action in the district court. In their petition, Plaintiffs argued:  (1) the Board lacked jurisdiction to grant the conditional use permit; (2) the Board's decision to grant Invenergy's applications was unreasonable; (3) the published and mailed notices of the Planning Commission's public hearing were defective; and (4) the County failed to provide due process to Plaintiffs.

After the parties filed cross-motions for summary judgment, the district court granted Plaintiffs' motion to bifurcate the reasonableness issue from the other issues. As a result, the district court deferred addressing whether the Board's approval of Invenergy's applications was reasonable until it decided the other issues.

The district court first granted Plaintiffs' motion for summary judgment on Invenergy's conditional use permit and determined the permit was void. In this ruling, the district court found that the Zoning Regulations require both a positive recommendation from the Planning Commission and approval by the Board before a conditional use permit for a wind farm may be issued. Because the Planning Commission recommended against the conditional use permit, the district court determined the Board lacked

6

jurisdiction to approve the permit. However, the district court ruled that no notice defects or due process concerns rendered the zoning change invalid on procedural grounds. Accordingly, the district court ordered a hearing on the bifurcated question of whether the Board's approval of the zoning change was reasonable.

After hearing the parties' arguments on the reasonableness of the zoning change, the district court granted Plaintiffs' motion for summary judgment and struck the resolution approving the zoning change. In this ruling, the district court found that the zoning change was unreasonable because no evidence was presented which supported any permissible Agricultural Commercial District use other than a wind energy project.

The Board appeals and Plaintiffs cross-appeal.

### BOARD'S APPROVAL OF THE CONDITIONAL USE PERMIT AGAINST THE PLANNING COMMISSION'S RECOMMENDATION

The Board first contends the district court erred by finding the Zoning Regulations required approval from both the Planning Commission and the Board to grant Invenergy's conditional use permit. The Board argues that the Planning Commission issues only recommendations, and the Board retains the ultimate authority to approve a conditional use permit. The Board suggests a contrary interpretation requiring approval of both bodies would violate state law and be unenforceable.

Because the material facts are uncontroverted, we review the district court's summary judgment order de novo. *Wagner Interior Supply of Wichita, Inc. v. Dynamic Drywall, Inc.*, 305 Kan. 828, 831, 389 P.3d 205 (2017). Similarly, the interpretation of statutes and ordinances presents questions of law subject to unlimited review. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

7

The district court found that Article VII, Section 3, Paragraph 12 of the Zoning Regulations required a positive recommendation from the Planning Commission before Invenergy's conditional use permit could be granted. Article VII of the Zoning Regulations establishes the Agricultural Commercial District zoning designation. Section 3 of Article VII contains the uses allowed in areas zoned as an Agricultural Commercial District. And paragraph 12 of Section 3 lists certain uses—such as wind energy projects—permitted in an Agricultural Commercial District if a conditional use permit is obtained. Specifically, Article VII, Section 3, Paragraph 12 provides:

> "The following uses may be allowed by conditional use permit when submitted, reviewed, and approved by the Planning Commission and Governing Body and subject to conditions as the Commission and Governing Body may impose:
>
> . . . .
>
> "e. Solar or Wind Energy Projects . . . ."

Plaintiffs reason that, under the plain language of Article VII, Section 3, Paragraph 12, a conditional use permit requires approval by the Planning Commission *and* the Board as the governing body. The Board responds that, when the Zoning Regulations are read as a whole, conditional use permits do not require approval by the Planning Commission.

Our court applies the same rules to interpreting a municipal ordinance as we would when interpreting a statute. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 272, 241 P.3d 15 (2010). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be determined. *State ex rel. Schmidt*, 303 Kan. at 659. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, we do not speculate about the

8

legislative intent behind that clear language, and we refrain from reading something into the statute not readily found in its words. 304 Kan. at 409.

Even when various statutory provisions are unambiguous, we consider various provisions of an act in pari materia with a view towards reconciling and bringing the provisions into workable harmony if possible. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 919, 349 P.3d 469 (2015). We also construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014).

Utilizing these rules of construction, we begin by considering the language and overall design of the Zoning Regulations to interpret the meaning of Article VII, Section 3, Paragraph 12. See *Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1064, 390 P.3d 504 (2017).

*Zoning Regulations Governing Conditional Use Permits*

The Zoning Regulations define a conditional use permit as "[t]he documentable evidence of authority granted by the Governing Body to locate a Conditional Use at a particular location." Article XXX of the Zoning Regulations governs conditional uses. Article XXX, Section 1 begins by recognizing that certain conditional uses are "enumerated in the use regulations of the various zones" and may be permitted in any district where the conditional uses are listed. This section then establishes the procedure for approving a conditional use.

Article XXX, Section 1 first provides that an applicant must submit site plans and a statement of the proposed use to the Planning Commission. The Planning Commission must then hold a public hearing, review the applicant's site plans and statement, and submit a recommendation to the Board. After receiving the Planning Commission's

recommendation, the Board may permit the use to occur where requested. The Board may also impose reasonable restrictions on the approval of a conditional use permit.

As contemplated by Article XXX, Section 1, many of Sumner County's zoning classifications allow certain uses if a conditional use permit is obtained. Each time a zoning classification allows conditional uses, the regulations use similar language:  "The following uses [of land] may be allowed in this district by conditional use permits when submitted, reviewed, and approved by the Planning Commission and Governing Body." This phrase tracts the language at issue in Article VII, Section 3, Paragraph 12.

*The Zoning Regulations Do Not Require Planning Commission Approval Before Granting a Conditional Use Permit*

When read in isolation, Plaintiffs are correct that Article VII, Section 3, Paragraph 12 seemingly requires that a conditional use permit be approved by the Planning Commission and the Board. But when the Zoning Regulations' conditional use provisions are considered together, the phrase "submitted, reviewed, and approved by the Planning Commission and Governing Body" refers to the process outlined in Article XXX, Section 1 where an applicant submits plans, the Planning Commission reviews the plans, and the governing body approves the conditional use permit. Under this process, approval by the Planning Commission is not required to obtain a conditional use permit.

Section 1 of Article XXX—the article governing conditional uses—details the procedure to obtain a conditional use permit to operate those conditional uses allowed in various zonings districts. Under this procedure, the Planning Commission submits a recommendation and the Board has sole authority to approve a conditional use permit. The literal language in Article VII, Section 3, Paragraph 12 conflicts with this procedure by also requiring approval by the Planning Commission.

10

Plaintiffs' interpretation could have merit if the phrase "submitted, reviewed, and approved by the Planning Commission and Governing Body" were used to describe the permitted conditional uses in only Agricultural Commercial Districts or a few zoning classifications. But since the Zoning Regulations use this language in every zoning classification, reading the language literally would render the procedure in Article XXX, Section 1 to obtain a conditional use permit meaningless. It is the duty of our court, as far as practicable, to reconcile these provisions to make them consistent, harmonious, and sensible. *Herrell v. National Beef Packing Co.*, 292 Kan. 730, 745, 259 P.3d 663 (2011).

Requiring Article XXX, Section 1's procedure for conditional use permits where the Planning Commission is tasked with an advisory function in submitting recommendations to the Board best harmonizes the regulations' language and operation in a way that effectuates the drafters' intent. "'It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over . . . other statutes which deal only incidentally with the same question.'" *In re Tax Exemption Application of Mental Health Ass'n of Heartland*, 289 Kan. 1209, 1215, 221 P.3d 580 (2009) (quoting *Chelsea Plaza Homes, Inc. v. Moore*, 226 Kan. 430, 432, 601 P.2d 1100 [1979]).

As a result, the detailed procedure to obtain a conditional use permit established in the article governing conditional use permits controls over the phrase "submitted, reviewed, and approved by the Planning Commission and Governing Body" used incidentally in the article on Agricultural Commercial Districts. Additionally, the definition of a conditional use permit recognizes only that the Board grants a conditional use.

The language at issue in Article VII, Section 3, Paragraph 12 also supports that it is a placeholder for the procedure in Article XXX, Section 1. A literal reading of Article VII, Section 3, Paragraph 12 produces an absurd result because conditional use permits

11

would need to be "submitted . . . by" the Planning Commission and Board to themselves for their review. Rather than force this nonsensical result, a more reasonable interpretation is that this language incorporates the detailed Article XXX procedure as the terms used in Article VII, Section 3, Paragraph 12 track those used in Article XXX. The Article XXX procedure provides that the applicant submits plans, the Planning Commission reviews the plans, and the governing body approves the plans.

Plaintiffs argue that the language requiring Planning Commission and Board approval controls under the County's rules of interpretation. The Zoning Regulations contain specific rules for interpreting its provisions. Article IV, Section 1, Paragraph 2 provides:

> "*Overlapping or Contradictory Regulations*. Where the conditions imposed by the provisions of these Regulations upon the use of land or structures are either more restrictive or less restrictive than comparable conditions imposed by any other provision of any other applicable law, ordinance, resolution, rule, or regulation of any kind, the regulations which are more restrictive and impose higher standards or requirements shall govern."

Relying on this provision, Plaintiffs claim the more restrictive language in Article VII, Section 3, Paragraph 12 governs over the Article XXX procedure requiring only the Board's approval. But Plaintiffs fail to appreciate that this rule of interpretation applies only to "conditions imposed . . . upon the use of land or structures." Because the issue on appeal involves procedural provisions—not conditions on land use—Article IV, Section 1, Paragraph 2 does not apply. Additionally, this provision does not apply to internal conflicts within the Zoning Regulations. Instead, the rule is used when comparing the Zoning Regulations' conditions to the provisions of "any *other* applicable law, ordinance, resolution, rule, or regulation of any kind." (Emphasis added.)

12

Plaintiffs also contend the Zoning Regulations do not suggest that the Planning Commission provides only an advisory function when considering conditional use permits. But contrary to Plaintiffs' argument, Article XXX, Section 1 limits the Planning Commission's function to making a "recommendation to the Governing Body" and gives the Board the authority to grant a conditional use permit. Moreover, as we next explain, the Planning Commission is considered an advisor to the Board on zoning matters.

The Zoning Regulations were adopted in accordance with the Sumner County Comprehensive Plan. The Comprehensive Plan outlines the Planning Commission's functions in areas of land use and commercial/industrial development. When discussing land use, the Comprehensive Plan states:

"Continuing implementation of the land use plan will be dependent upon proper administration of zoning and subdivision regulations . . . . In this sense, the Planning Commission acting in its official capacity *as advisor to the governing body* can play an especially important role in maintenance of a quality living environment." (Emphasis added.)

And the Comprehensive Plan also notes the Planning Commission's function as an advisor on zoning matters in commercial/industrial development:

"*Within* [*its*] *role as technical adviser to the Governing Body*, the Planning Commission should continue to play a pivotal role in the process of delineation and direction of emerging patterns of commercial and industrial development through application of the adopted guidelines and policies in concert with zoning and subdivision regulations." (Emphasis added.)

Adding to our interpretive analysis, we recognize that the Zoning Regulations would violate Kansas law if they required Planning Commission approval for conditional use permits. In this regard, we presume the drafters acted with full knowledge of Kansas

law when implementing the Zoning Regulations. *Ed DeWitte Ins. Agency v. Financial Assocs. Midwest*, 308 Kan. 1065, 1071, 427 P.3d 25 (2018). As a result, we also presume the drafters intended the Zoning Regulations to be effective and not in violation of Kansas law. See *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, 424, 845 P.2d 57 (1993) (noting that a municipal ordinance "is entitled to a presumption of validity and should not be stricken unless its infringement upon a statute is clear beyond substantial doubt").

A municipality has no inherent power to enact zoning laws. Instead, a municipality's zoning power is derived solely from the grant in zoning statutes. *143rd Street Investors v. Board of Johnson County Comm'rs*, 292 Kan. 690, 707, 259 P.3d 644 (2011). Along with the zoning laws in K.S.A. 12-741 et seq., municipalities may enact and enforce additional zoning regulations which do not conflict with those statutes. K.S.A. 12-741(a). But a county's power to change the zoning of property—which includes issuing conditional use permits—may be exercised only in conformity with the statutes that authorize zoning. *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 939, 218 P.3d 400 (2009). A county's failure to follow the zoning procedures in state law renders its action invalid. 289 Kan. at 939.

Under K.S.A. 12-755(a)(5), a county's governing body may adopt zoning regulations that provide for issuing conditional use permits. But K.S.A. 2019 Supp. 12-757 demands certain notice and hearing requirements for amending zoning regulations. Although the statute does not explicitly mention conditional use permits, Kansas courts have consistently found that the procedures in K.S.A. 2019 Supp. 12-757 apply to conditional use and special use permits. See *Manly v. City of Shawnee*, 287 Kan. 63, 67, 194 P.3d 1 (2008); *Rural Water District No. 2 v. Board of Miami County Comm'rs*, No. 105,632, 2012 WL 309165, at *4-7 (Kan. App. 2012) (unpublished opinion).

14

K.S.A. 2019 Supp. 12-757(b) provides that proposed zoning amendments must be "submitted to the planning commission for recommendation." The planning commission must hold a public hearing on proposed zoning amendments and create a written summary of the proceedings. K.S.A. 2019 Supp. 12-757(b). After receiving the planning commission's recommendation, the county's governing body may approve the zoning amendment regardless of the planning commission's recommendation. The governing body may adopt the recommendation by resolution, override the planning commission's recommendation by a two-thirds majority vote, or return the recommendation to the planning commission. K.S.A. 2019 Supp. 12-757(d).

Under K.S.A. 2019 Supp. 12-757, the planning commission fulfills only an advisory function. *Manly*, 287 Kan. at 70-71. The planning commission's authority is limited to studying facts and submitting recommendations to the governing body which takes final action. *Houston v. Board of City Commissioners*, 218 Kan. 323, 330, 543 P.2d 1010 (1975). To assign the planning commission with the ultimate authority to deny a zoning amendment would impermissibly shift the County's governance from the elected Board to an appointed advisory commission. See *Manly*, 287 Kan. at 71. The Kansas Legislature did not intend "for the tail to wag the dog, i.e., an advisory body should not have the authority to trump the decision of the governing body that appointed it." 287 Kan. at 71.

If the Zoning Regulations were interpreted to require Planning Commission approval for conditional use permits, then the regulations would conflict with state law and be invalid. "'The primary method for determining whether an ordinance or resolution of a county is inconsistent with a state statute is to see whether the local law prohibits what the state law permits or the state law prohibits what the local law permits.'" *David v. Board of Norton County Comm'rs*, 277 Kan. 753, 757, 89 P.3d 893 (2004). Requiring Planning Commission approval prohibits the Board from overriding the Planning Commission's recommendation as permitted in K.S.A. 2019 Supp. 12-757. Thus, when

15

considering the Zoning Regulations' possible meanings, we presume the drafters did not intend to violate Kansas law by requiring Planning Commission approval for conditional use permits.

In sum, when reading the Zoning Regulations together, the most harmonious and sensible interpretation is that the detailed process in Article XXX, Section 1—where only approval by the Board is needed—governs the procedure to obtain conditional use permits. And the phrase "submitted, reviewed, and approved by the Planning Commission and Governing Body" as used in various zoning classifications refers to this process where an applicant submits plans, the Planning Commission reviews the plans, and the Board approves the conditional use permit. Under this procedure, the Board may grant a conditional use permit even if the Planning Commission recommends against approval.

In summary, we hold that Invenergy's conditional use permit is valid despite the Planning Commission's recommendation against approval. The district court erred by finding the Planning Commission's negative recommendation rendered Invenergy's conditional use permit invalid.

REASONABLENESS OF THE BOARD'S DECISION TO APPROVE THE ZONING CHANGE

The Board next contends the district court erred by invalidating the zoning change from Rural District to Agricultural Commercial District. The Board argues that the zoning change was reasonable because it considered the perceived harms and benefits of a wind energy project—a use allowed in an Agricultural Commercial District.

This issue also involves Article VII of the Zoning Regulations, which governs Agricultural Commercial Districts. Section 3 of Article VII contains 12 numbered

16

paragraphs specifying the permitted uses in Agricultural Commercial Districts. These enumerated uses are:

1. "All uses permitted in the [Rural District]";
2. "Roadside stands for sale of agricultural products by an operator other than the producer of the agricultural product";
3. "Livestock sale barns";
4. "Grain elevators and storage bins, including the sale of related items, such as seed, feed, fertilizer, and insecticides";
5. "Campgrounds on a minimum of five (5) acres";
6. "Drive-in theaters";
7. "Feed manufacturers, such as alfalfa products";
8. "Fertilizer plants";
9. "Fraternal and/or service clubs";
10. "Hunting clubs and shooting preserves";
11. "Private clubs"; and
12. Certain uses that may be allowed by conditional use permit, which includes wind energy projects.

After the district court determined Invenergy's conditional use permit was invalid, it next considered whether the zoning change was reasonable. The district court found that "[t]he only *Golden* factor evidence and information presented at the hearings concerned the wind farm." And the district court noted that the Board approved the zoning change without considering any evidence for a permissible use which did not require a conditional use permit. The district court then struck the zoning change, finding:

> "The [Board] asks this court to hold that consideration of *Golden* factor evidence
> for one use—wind farms—is sufficient. The problem with this is that it eviscerates the
> first step in the process—the zone change—as a discrete step in the regulations clearly

17

aimed at the broader implications that come with any zone change, beyond that which come with any individual use. Since no evidence was presented supporting any of the permitted uses under Article VII, Section 3, ¶¶ 1-11, the Board's zone change which now permits those uses is unreasonable."

Under K.S.A. 12-760, a district court reviews a governing body's zoning decision to determine the reasonableness of that decision. The reasonableness of a governing body's decision implicates fact and policy determinations that are not the province of the courts. *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 14, 270 P.3d 1 (2011). Our Supreme Court concisely stated the standards when reviewing the reasonableness of zoning decisions in *Zimmerman*, 289 Kan. at 944-45 (quoting *Combined Investment Co. v Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 [1980]):

> "'(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.
>
> "'(2) The district court's power is limited to determining
>
> '(a) the lawfulness of the action taken, and
>
> '(b) the reasonableness of such action.
>
> "'(3) There is a presumption that the zoning authority acted reasonably.
>
> "'(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.
>
> "'(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.
>
> "'(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.
>
> "'(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.
>
> "'(8) An appellate court must make the same review of the zoning authority's action as did the district court.'"

18

In *Golden v. City of Overland Park*, 224 Kan. 591, 598, 584 P.2d 130 (1978), the court set forth eight suggested factors which a zoning body should consider when making a zoning decision. These eight factors—called the *Golden* factors—also help courts review whether a zoning authority's final decision was reasonable:

> "'1. The character of the neighborhood;
>
> "'2. the zoning and uses of properties nearby;
>
> "'3. the suitability of the subject property for the uses to which it has been restricted;
>
> "'4. the extent to which removal of the restrictions will detrimentally affect nearby property;
>
> "'5. the length of time the subject property has remained vacant as zoned;
>
> "'6. the relative gain to the public health, safety, and welfare by the destruction of the value of plaintiff's property as compared to the hardship imposed upon the individual landowner;
>
> "'7. the recommendations of a permanent or professional planning staff; and
>
> "'8. The conformance of the requested change to the city's master or comprehensive plan.' [Citations omitted.]" *Zimmerman*, 289 Kan. at 945-46.

Both parties agree on the nature of the evidence presented to the Board on the zoning change. The Board considered evidence on the benefits and harms of allowing a wind energy project in the area. And there was no discussion of any other permitted use allowed in Agricultural Commercial Districts.

Plaintiffs' argument on appeal is that, since the conditional use permit is invalid, the zoning change was unreasonable because the Board considered no permitted use that Invenergy could perform in an Agricultural Commercial District. But as discussed in the previous issue, Invenergy's conditional use permit is valid despite the Planning Commission's negative recommendation. As a result, contrary to Plaintiffs' arguments, the Board heard and considered evidence of a permitted use that Invenergy could perform through its conditional use permit. During oral argument, Plaintiffs acknowledged that

their argument about the unreasonableness of the zoning change would fail upon our finding that the conditional use permit is valid.

While Plaintiffs' argument rests on the validity of the conditional use permit, the district court also reasoned that the zoning change was unreasonable because the Board considered only the single use of wind farms without receiving any evidence on the other uses permitted by Article VII, Section 3. But exercising unlimited review, we find the zoning change is reasonable even though the Board did not consider the first 11 uses listed in Article VII, Section 3.

The district court is correct that the zoning change allowed landowners to engage in any of the permitted Agricultural Commercial District uses—such as fertilizer plants or drive-in theaters—on the land. And the proponents of the zoning change never discussed the benefits of the uses recognized in Article VII, Section 3, Paragraphs 1-11. But the district court identified no rule requiring the Board to consider multiple permitted uses in a zoning district when considering a zoning change.

Contrary to the district court's reasoning, when considering the reasonableness of a zoning change, Kansas courts should focus on the anticipated use of the property, not all the permitted uses. See, e.g., *Combined Investment Co.*, 227 Kan. at 30-31 (analyzing the harms and benefits of an anticipated quarry use); *Arkenberg v. City of Topeka*, 197 Kan. 731, 739, 421 P.2d 213 (1966) (finding that the rezoning of property to permit construction of a high-rise apartment complex for senior citizens was reasonable when the city considered a "detailed and comprehensive study of the use to be made of the property").

The Kansas Supreme Court in *Golden* explained the importance of focusing on the planned use of property—and not the theoretical uses allowed by the new zoning classification—when considering a zoning change. 224 Kan. at 600. In *Golden* the

20

plaintiff sought to rezone his property as planned retail to build a small shopping center for retail shops. But the planned retail classification also allowed the property to be used for convenience stores and fast-food shops, which the community opposed. The *Golden* court dismissed the public concern noting:

> "Such broad classifications are not the fault of the landowner. The protests of neighborhood residents, voiced at planning commission and council meetings, were for the most part against the establishment of convenience stores or fast-food shops neither of which were proposed by the plaintiff. Protests, of course, may be considered; but protests against uses not proposed are not entitled to great weight." 224 Kan. at 600.

Like the zoning classification in *Golden*, the broad scope of permitted uses in an Agricultural Commercial District is not the fault of Invenergy. Invenergy is a wind energy developer which sought a zoning change to construct a wind energy project. Even though a wind energy project is a permitted conditional use in an Agricultural Commercial District, the district court's reasoning would require Invenergy to present evidence on other permitted uses which will not occur. Like the community opposition in *Golden*, any evidence on non-proposed uses allowed by the zoning district would be entitled to little weight. Moreover, no community opposition was raised against these other uses allowed by an Agricultural Commercial District. As a result, the zoning change is reasonable even though the Board considered only the proposed use of a wind energy project and not the other uses permitted in an Agricultural Commercial District.

We hold the district court erred by ruling that the Board's decision to approve the zoning change was not reasonable.

Plaintiffs first cross-appeal the district court's finding that the defective notice to Jeffery and Brooke Potucek did not render Invenergy's conditional use permit and zoning change invalid. Plaintiffs suggest the Board's zoning decisions are invalid because the County failed to satisfy the necessary notice requirements by neglecting to mail the Potuceks written notice of Invenergy's proposal at least 20 days before the Planning Commission's hearing. The Board responds that its zoning decisions are valid because the County substantially complied with the notice requirements of K.S.A. 2019 Supp. 12-757.

We review the district court's summary judgment order de novo. *Peters v. Deseret Cattle Feeders*, 309 Kan. 462, 469, 437 P.3d 976 (2019). And this issue involves statutory interpretation which presents a question of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

The parties do not dispute the facts material to this issue. On November 17, 2016, the County mailed certified letters to all persons and entities owning property within 1,000 feet of the proposed boundaries of the Argyle Creek Wind Project, except for the Potuceks. This notice informed the property owners that the Planning Commission would hold a meeting on Invenergy's applications on December 7, 2016, at 7:30 p.m.

On December 7, 2016, another landowner informed Mr. Potucek that a wind project was proposed. Mr. Potucek also received verbal notice of the Planning Commission's meeting on the proposals scheduled for 7:30 p.m. that evening. Before the meeting, Mr. Potucek went to the office of the Sumner County Planning, Zoning, and Environmental Health Department to request information on the Planning Commission's meeting scheduled later that day. Jon Bristor—the Director of the Planning, Zoning, and

22

Environmental Health Department—provided Mr. Potucek with information about the Planning Commission's meeting and invited him to attend the meeting. But Mr. Potucek did not attend the Planning Commission's meeting.

Sometime between December 7, 2016, and December 21, 2016, Mr. Potucek called the Planning, Zoning, and Environmental Health Department and talked to Bristor. During this conversation, Bristor informed Mr. Potucek of the Board's meeting scheduled for December 27, 2016. After this phone conversation, the County mailed the Potuceks a copy of the certified letter which it previously mailed to the other property owners. And on December 21, 2016, the County mailed another letter about Invenergy's proposals to the Potuceks which informed them of the Board's meeting scheduled for December 27, 2016. The Potuceks received the December 21, 2016 letter before the Board's meeting. As a result, the Potuceks had actual notice of the Board's meeting before the meeting occurred.

Before the Board's meeting, Invenergy amended its applications to revise the project's boundaries and reduce the project's footprint. As a result of the reduced footprint, the Potuceks' property was no longer within 1,000 feet of the project boundary. That said, Mr. Potucek attended the Board's meeting on December 27, 2016, and spoke during the public comment portion of the meeting.

Under K.S.A. 2019 Supp. 12-757(b), a planning commission must hold a public hearing on proposed zoning amendments. When a proposed amendment affects specific property, "written notice of such proposed amendment shall be mailed at least 20 days before the hearing . . . to all owners of record of real property located within at least 1,000 feet of the area proposed to be altered." K.S.A. 2019 Supp. 12-757(b). "Proper notice is mandatory and must be complied with to give the planning commission authority to recommend action, and the [governing body] jurisdiction to act." *Crumbaker v. Hunt Midwest Mining, Inc.*, 275 Kan. 872, 886, 69 P.3d 601 (2003).

23

Since there was not strict compliance with statutory notice requirements, we must determine (1) whether the notice provision in K.S.A. 2019 Supp. 12-757(b) may be satisfied through substantial compliance and, if so, (2) whether the County substantially complied with the notice provision.

*Notice Under K.S.A. 2019 Supp. 12-757(b) is Satisfied Through Substantial Compliance*

Kansas courts have applied the substantial compliance standard to a municipality's actions during annexation. See, e.g., *Stueckemann v. City of Basehor*, 301 Kan. 718, 726, 348 P.3d 526 (2015); *City of Lenexa v. City of Olathe*, 233 Kan. 159, 163-64, 660 P.2d 1368 (1983). The law of annexation is similar to zoning laws. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1033, 181 P.3d 549 (2008). "[I]t is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient." *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988). And nothing within K.S.A. 2019 Supp. 12-757(b) prohibits applying the substantial compliance doctrine.

Plaintiffs claim the substantial compliance doctrine does not apply because (1) K.S.A. 2019 Supp. 12-757 does not mention substantial compliance and (2) K.S.A. 2019 Supp. 12-757(b) describes the consequences of noncompliance. Plaintiffs' arguments are not persuasive.

Citing *Claus v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 12, 825 P.2d 172 (1991), Plaintiffs first suggest the substantial compliance standard does not apply because K.S.A. 2019 Supp. 12-757 does not mention the standard. In *Claus*, the court determined that substantial compliance did not apply to the Kansas Judicial Review Act's requirement that the petitioner serve a copy of the petition to the agency head. See 16 Kan. App. 2d at 13-14. The court reasoned that, unlike the service of process provisions

24

in the Rules of Civil Procedure, the service provisions in K.S.A. 77-615(a) did not mention substantial compliance. 16 Kan. App. 2d at 13-14.

Contrary to Plaintiffs' arguments, the reasoning in *Claus* does not apply because that case involved service of process, while the issue here involves mailed notice of county action. Kansas courts recognize that substantial compliance applies differently in service provisions than in notice provisions. See *Byrd v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 145, 152, 221 P.3d 1168 (2010), *aff'd* 295 Kan. 900, 287 P.3d 232 (2012). Unlike service provisions, substantial compliance with statutory notice provisions is typically sufficient. *Barnhart*, 243 Kan. at 213. Additionally, unlike the statute in *Claus* requiring service on one individual, K.S.A. 2019 Supp. 12-757(b) requires the County to ascertain and mail notices to all property owners within a certain geographical area. The greater risk of error provides additional support to treat *Claus* differently and require only substantial compliance with the notice requirements in K.S.A. 2019 Supp. 12-757(b).

Plaintiffs next argue the substantial compliance standard does not apply because K.S.A. 2019 Supp. 12-757(b) describes the consequences of noncompliance. This court has relied on the lack of a provision describing the consequences of noncompliance as support for applying substantial compliance. *Mendenhall v. Roberts*, 17 Kan. App. 2d 34, 43, 831 P.2d 568 (1992).

Plaintiffs allege the following sentence in K.S.A. 2019 Supp. 12-757(b) embodies the consequences of noncompliance: "When the notice has been properly addressed and deposited in the mail, failure of a party to receive such notice shall not invalidate any subsequent action taken by the planning commission or the governing body." But this language states no consequence of a municipality's failure to mail notice to every required party. Instead, the language merely provides that the landowner's failure to receive properly mailed notice does not invalidate later action. As in *Mendenhall*, the absence of a provision in K.S.A. 2019 Supp. 12-757 describing the consequences of

25

noncompliance "invites application of the theory of substantial compliance." 17 Kan. App. 2d at 43. As a result, we find that the notice provision in K.S.A. 2019 Supp. 12-757(b) may be satisfied with substantial compliance.

*The County Substantially Complied with K.S.A. 2019 Supp. 12-757(b)*

Substantial compliance requires less than strict compliance and means "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Sleeth v. Sedan City Hospital*, 298 Kan. 853, 865, 317 P.3d 782 (2014). Stated another way, substantial compliance is satisfied when one complies with the spirit and intent of the statute, but not with its absolute terms. *A & S Rental Solutions, Inc. v. Kopet*, 31 Kan. App. 2d 979, 982, 76 P.3d 1057 (2003).

The objective of the mailing requirement is to provide surrounding landowners with notice and the opportunity to be heard on a proposed zoning amendment. The notice is for the benefit of the neighboring landowners, informing them of the public hearing where they may voice their opinions on the proposed zoning amendment and discuss whether the amendment would promote public health, safety, and welfare. The County complied with the spirit and intent of the mailing requirements in K.S.A. 2019 Supp. 12-757(b) despite providing late notice to the Potuceks about Invenergy's proposals.

Under similar circumstances, this court has found that a municipality substantially complied with statutory notice requirements. In *Pishny v. Board of Johnson County Comm'rs*, 47 Kan. App. 2d 547, 277 P.3d 1170 (2012), the City of Overland Park failed to give proper notice of a public hearing on an annexation petition to the owners of an 11.33 percent interest in a certain tract in the area proposed to be annexed. Noting the city later sent notice of the public hearing and the required materials to the landowners before the public hearing, this court held "[t]he statutory notice requirement was substantially complied with." 47 Kan. App. 2d at 580.

26

Another case with similar facts is *Hawthorne v. City of Santa Fe*, 88 N.M. 123, 124, 537 P.2d 1385 (1975), where the Supreme Court of New Mexico found substantial compliance with the statutory notice requirements when the city sent rezoning notices to all property owners within 100 feet of the rezoned property except one—Fred Martinez. The court reasoned:

"Martinez was fully aware of the proposed zone changes. Obviously, the reason for such notice is to apprise interested parties of the hearing so that they may attend and state their views on the proposed zoning amendment, pro or con. It is our view that Martinez, having had knowledge of the hearing, was properly notified and this constitutes substantial compliance with the statute in question. The purpose of the statute has been met and that is all that is required in this instance." 88 N.M. at 124.

As in *Pishny*, after the County discovered its mistake, it took corrective actions and mailed the notice to Jeffery and Brooke Potucek. The County mailed the official notice and another letter informing the Potuceks of the Board's meeting. Although the County mailed these notices after the Planning Commission's hearing, it informed the Potuceks of the public hearing before the Board—an additional hearing not required by K.S.A. 2019 Supp. 12-757. The notices informed the Potuceks of their ability to voice their opinions on the proposed zoning amendments before the governing body, who has the authority to grant or deny the proposals. The County satisfied the spirit and intent of the mailing requirements in K.S.A. 2019 Supp. 12-757(b).

Additionally, as the district court noted, Mr. Potucek received actual notice before the Planning Commission's meeting and Plaintiffs sustained no prejudice because the Planning Commission recommended denial of the proposals. Plaintiffs respond that actual notice and lack of prejudice are not relevant considerations when determining whether the County substantially complied with the notice provisions.

27

In the context of service, Kansas courts typically find that actual notice by a party does not affect whether another substantially complied with statutory service requirements. *Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 874-77, 127 P.3d 319 (2006); *Cook v. Cook*, 32 Kan. App. 2d 214, 222, 83 P.3d 1243 (2003) ("The fact that Michael had actual knowledge of the suit and did not suffer prejudice does not mean there was substantial compliance under K.S.A. 60-204"); but see *City of Hoisington v. $2,044 in U.S. Currency*, 27 Kan. App. 2d 825, Syl. ¶ 5, 8 P.3d 58 (2000) (noting that since the City had actual notice of the claim, service by first class mail substantially complied with K.S.A. 60-4111.) The underlying rationale in these cases is that substantial compliance standards do not allow the courts to create new methods of serving process. *Fisher v. DeCarvalho*, 298 Kan. 482, 491, 314 P.3d 214 (2013).

Turning to the relevance of prejudice, Kansas courts often treat substantial compliance separately from prejudice. *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 682, 840 P.2d 448 (1992). But see *Stueckemann*, 301 Kan. at 731-32 (noting an inaccurate legal description did not affect landowners' opportunity or ability to oppose annexation because landowners voiced opposition at a public hearing). And lack of prejudice does not amount to substantial compliance. *Cook*, 32 Kan. App. 2d at 222. For example, in *Carson v. McDowell*, 203 Kan. 40, 43, 452 P.2d 828 (1969), the appellees argued that, without any prejudice, the landowner could not complain of defective notice on a zoning change. The Kansas Supreme Court rejected this argument, holding the statutory notice was mandatory and needed to be complied with to pass the ordinance. 203 Kan. at 43-44.

Even assuming these limits on considering actual notice and prejudice apply, the County still substantially complied with the notice provisions in K.S.A. 2019 Supp. 12-757(b).

The statutory provisions in K.S.A. 2019 Supp. 12-757(b) require mailed notice to the surrounding landowners. While verbal notice is not an approved method of providing notice, the fact that a fellow landowner told Mr. Potucek about the proposed wind project and the Planning Commission's meeting showed that the local community was informed of the project and the public hearing. At the Planning Commission's meeting, 13 citizens opined on the proposed zoning amendments and provided various arguments for why the proposal should be denied. And at the Board's public hearing, 29 citizens—including Mr. Potucek—commented on whether the amendments would promote public welfare. Although the County failed to strictly comply with the statute, it complied with the essential matters necessary to ensure that every reasonable objective of the statute was satisfied.

As a result, we hold the County substantially complied with the notice provisions in K.S.A. 2019 Supp. 12-757(b) when it properly mailed certified letters to all persons and entities owning property within 1,000 feet of the proposed wind farm, except for the Potuceks. Accordingly, the conditional use permit and zoning change are valid despite the County's failure to mail the Potuceks proper notice.

MISIDENTIFICATION OF WIND PROJECT NAME

Plaintiffs next cross-appeal the district court's finding that the misidentified project name in the notice did not render Invenergy's conditional use permit invalid. Plaintiffs suggest the conditional use permit is invalid because, by using the wrong project name, the notice failed to describe the proposal in general terms as K.S.A. 2019 Supp. 12-757 and K.S.A. 12-756 required.

Once again, this court reviews a district court's summary judgment order de novo. *Peters*, 309 Kan. at 469. And this issue also involves statutory interpretation which presents a question of law subject to unlimited review. *Nauheim*, 309 Kan. at 149.

29

Under K.S.A. 2019 Supp. 12-757(b), a planning commission must give notice of proposed amendments in the manner provided in K.S.A. 12-756. This statute provides that the published notice of a zoning proposal must "describe such proposal in general terms." K.S.A. 12-756(b). In addition to the publication notice, written notice of the proposed amendment must be mailed to surrounding landowners at least 20 days before the planning commission's public hearing. K.S.A. 2019 Supp. 12-757(b).

In the published notice, the County described Invenergy's proposal as a request for a "Conditional Use for the development, construction, operation and decommissioning of Wild Plains Wind Project." While the published notice incorrectly used the name "Wild Plains Wind Project" to describe Invenergy's request, the notice included a map correctly labeled "Argyle Creek Wind Project." The words "Argyle Creek Wind Project" are prominently displayed in much larger font than the misnomer in the body of the notice.

The first mailed notice to the surrounding landowners also incorrectly used the name "Wild Plains Wind Project" when describing Invenergy's request for a conditional use permit. But this notice also included the map labeled "Argyle Creek Wind Project." The County discovered the error in the published notice and the certified letters before the Planning Commission's meeting. Although the County did not publish a corrected notice in the newspaper, the County mailed another certified letter to landowners with the corrected project name before the Planning Commission's meeting.

Plaintiffs reprise their claim that substantial compliance is inapplicable to notice provisions in Kansas zoning statutes. But for the reasons addressed in the previous issue, we find the notice requirements at issue in K.S.A. 12-756(b) and K.S.A. 2019 Supp. 12-757(b) are satisfied through substantial compliance. As a result, we consider whether the County substantially complied with the statutory requirement to describe Invenergy's proposal for a conditional use permit in general terms.

The Kansas Supreme Court in *Stueckemann* addressed a similar situation in the context of annexation and determined the city substantially complied with notice provisions. In *Stueckemann*, property owners disputed annexation arguing the resolution proposing annexation contained an inadequate description of the land to be annexed because the resolution incorrectly included a parcel not being annexed. The court held that the notice substantially complied with the statute despite the error because the included documents sufficiently informed the landowners of the land the city proposed to annex and did not affect the landowners' ability to be heard. 301 Kan. at 728-32. In its reasoning, the court found that the mistaken inclusion was an ordinary typographical error and the public could determine the city's intent because the erroneously included parcel could not be legally annexed. 301 Kan. at 730.

Like the error in *Stueckemann*, the misidentified project name did not affect the community's opportunity to appear and be heard before the Planning Commission and the Board. The name "Wild Plains Wind Project" still notified the citizens that Invenergy proposed to build and operate a wind farm. Thus, the notice satisfied the purpose of informing the public of the applicant's proposed use. And once the County discovered the error, it sent corrected notices to those most likely to be affected by the proposed use—the surrounding landowners.

Additionally, the public could determine the name of Invenergy's proposed project from the published notice. The notice included an accurate legal description of the project area and a map of the project's boundaries. The "Wild Plains Wind Project" was a previously approved wind energy project and therefore could be easily recognized as a mere typographical error. And the correct name of the project is the most conspicuous language in the notice—in large font above the map. The County substantially complied with the requirement to describe Invenergy's proposal for a conditional use permit in general terms.

31

The conditional use permit is valid even though the notice misidentified the wind project name when describing Invenergy's proposal. Accordingly, the district court did not err by ruling that the zoning decisions were not invalid because the County provided imperfect notice.

Having found that the zoning change and conditional use permit are valid despite Plaintiffs' contentions and that the district court erred by striking these zoning decisions, we reverse the district court's grant of summary judgment to Plaintiffs and order the district court to grant summary judgment in favor of the Board.

Affirmed in part, reversed in part, and remanded with directions to grant summary judgment for the Board and uphold the resolutions approving the zoning change and Invenergy's conditional use permit.